**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

JACQUELINE CLARK,

                                                  CASE NO.:

       Plaintiff,

     -against-                               **PLAINTIFF DEMANDS**
                                           **A TRIAL BY JURY**

HIRE QUEST, LLC,
WECHSLER CONSTRUCTION GROUP, INC.,
and TRAVIS WALLACE

              Defendants.

————————————————————————X

## COMPLAINT FOR DAMAGES AND JURY DEMAND

Plaintiff Jacqueline Clark ("**Plaintiff**" or "**Ms. Clark**"), by her undersigned counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant Hire Quest, LLC. (referred to herein as "**HIRE QUEST**"), Defendant Wechsler Construction Group, Inc. (referred to herein as "**WECHSLER**"), and Defendant Travis Wallace (referred to herein as "**WALLACE**") (Collectively referred to herein as "**Defendants**"), and alleges as follows:

## INTRODUCTION

1.    This case is about an employer who subjected its blatant hostile harassment and molestation by her supervisors during her employment with the Defendant HIREQUEST and Defendant WECHSLER.

2.    Plaintiff Jacqueline Clark brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("**Title VII**"), and 18 U.S.C. §1591 ("**Section 1591**"), as well as for assault, battery, and infliction of emotional distress pursuant to state tort law.

3.    Ms. Clark seeks monetary relief to redress Defendants unlawful practices in violation of Title VII and Section 1591. Additionally, this action seeks to redress the deprivation

of Ms. Clark's personal dignity and her civil right to pursue equal employment opportunities in a place free from the risk of harassment and assault.

4.      Defendant HIREQUEST and Defendant WECHSLER's unrelenting discrimination and harassment against Plaintiff culminated with her unlawful termination.

5.      At bottom, Defendants are liable for subjecting Ms. Clark to a work environment infested with relentless gender/sex discrimination which culminated in her constructive discharge.

## PARTIES

6.      At all times material, Plaintiff JACQUELINE CLARK (hereinafter referred to as "Plaintiff" or "CLARK") was and is an individual woman who is a resident of the State of Florida, Miami-Dade County.

7.      Defendant HIRE QUEST, LLC (hereinafter referred to as "**HIRE QUEST**") was and is a Florida Limited Liability Company authorized to do business in the State of Florida, with their principal place of business located at 111 Springhall Drive, Goose Creek, South Carolina 29445.

8.      Defendant WECHSLER CONSTRUCTION GROUP, INC. (hereinafter referred to as "**WECHSLER**") was and is a Florida For-Profit Corporation authorized to do business in the State of Florida, with their principal place of business located at 1735 Ponce De Leon Boulevard, Coral Gables, Florida 33134.

9.      At all times material, Defendant HIRE QUEST and Defendant WECHSLER (collectively referred to herein as "**COMPANY**") were Ms. Clark's joint/sole employer. Defendants COMPANY both maintained the ability to modify Plaintiff Clark's employment, including but not limited to changing Plaintiff's hours, work assignments, work schedule, and work location, as well as both entities maintained the ability to hire and/or fire Plaintiff.

10.     Defendant TRAVIS WALLACE (hereinafter referred to as "**WALLACE**") was and still is believed to be a resident of the State of Florida.

11.     Defendant WALLACE was employed by Defendant WECHSLER and held supervisory authority over Plaintiff with regard to her employment including but not limited to, the power to hire/fire, demote/promote, and discipline Plaintiff.

12.     At all relevant times, Defendant COMPANY, has been continuously doing business in the State of Florida and Miami-Dade County and has continuously held at least 15 employees for all relevant calendar years. *42 U.S.C. § 2000e(b).*

## JURISDICTION AND VENUE

13.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1), as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII and Section 1591.

14.     This Court further has supplemental jurisdiction pursuant to 28 U.S.C. 1367 over all State causes of action.

15.     Venue is proper in this Court under 28 U.S.C. §1391 because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Southern District of Florida, Miami-Dade Division.  Defendant's business was located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district. Plaintiff was employed by Defendants COMPANY and assaulted by Defendant WALLACE within Miami-Dade, Florida, located in Miami-Dade County, Florida.

## ADMINISTRATIVE PREREQUISITES

16.     Plaintiff has complied with all statutory prerequisites in order to file this action, including the exhaustion of administrative prerequisites.

17.     On or about August 13, 2020, Plaintiff timely dual-filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("**EEOC**") (Charge No. 15D202100019) and the Florida commission on Human Relations ("**FCHR**") (Charge No. 202126564), naming the Defendant BROWARD.

18.     In accordance with and pursuant to the existing workshare agreement between the two agencies, an FCHR filing automatically operates as a dual EEOC filing.

19.     On or about May 6, 2021, the EEOC issued Plaintiff her notice of right to sue.

20.     This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter. This action is being commenced more than (180) days since the inception of Plaintiff's administrative action against the Defendant.

## STATEMENT OF MATERIAL FACTS

21.     On or around December 4, 2019, Defendant COMPANY hired Plaintiff. At all times material, Defendant COMPANY advised Plaintiff Clark that she reported to Mr. WALLACE.

22.     Defendant COMPANY hired Plaintiff to work as a Pool Laborer. In this role, Defendant COMPANY, by and through Plaintiff's assigned manager, Defendant WALLACE, tasked Plaintiff with such responsibilities including but not limited to cleaning, picking up materials, and sanitizing assigned workstations.

23.     Beginning in or around early February 2020, WALLACE began routinely making sexually suggestive and unwelcome comments toward Plaintiff.

24.     Defendant WALLACE initiated his campaign of harassment by making a concerted effort to isolate Plaintiff Clark. WALLACE would routinely assign Plaintiff tasks in remote spaces or empty stairwells, aware there would be no one else present.

25.     Once alone at her workstation, WALLACE would proceed to hover over Plaintiff, leering and ogling her from a distance as she completed the mundane tasks assigned to her.

26.     At all times throughout her work Plaintiff could feel WALLACE's eyes upon her, gazing every move she made. His watching made her uncomfortable, particularly in light of her being alone and without means of escape when he was present.

27.     WALLACE's ogling quickly turned physical as Plaintiff Clark worked in the stairwell. On at least two distinct occasions WALLACE walked past Plaintiff Clark as she worked int eh stairwells, as grabbed at both her breasts and buttocks.

28.     Plaintiff immediately instructed WALLACE to stop touching her to which he erupted. WALLACE became overtly and verbally aggressive with Plaintiff Clark, demanding she be silent and go back to work.

29.     Plaintiff was terrified by WALLACE and his quickly escalating sexual attacks combined with his quick temper. She cowered into corners and attempted to avoid his presence at all turns.

30.     On or around February 27, 2020, Plaintiff Clark and her female colleagues were cleaning a unit at the worksite. WALLACE entered the unit and summoned Plaintiff Clark out of the unit and away from the eyes of the female colleague.

31.     WALLACE falsely lead Plaintiff Clark towards a stairwell, a common tactic he used to isolate her for the purpose of work assignments over the weeks past, but today was difference.

32.     After entering the stairwell, it became evident to Plaintiff Clark that the area had been previously cleaned. Her heart began to race as she stood alone with WALLACE who gestured and demanded sternly, "Go across to that unit; it needs to be cleaned." As Plaintiff Clark walked across the room, WALLACE paced closely behind.

33.     Plaintiff entered the room to the unit upon which WALLACE quickly pressed his way inside and closed the door behind her. Plaintiff was now terrified and alone with WALLACE.

34.     Plaintiff Clark noted to WALLACE that the room was obviously clean. WALLACE responded, "Whatever is going on from this point on is what *I say* is going on." WALLACE then directed her to the corner of the room and pointed to an upturned white bucket. He said to her, "You're going to sit right there." Ms. Clark was terrified. Trapped in the room she felt that she had no choice but to comply.

35.     WALLACE proceeded to walk towards her. As he towered over her, he unzipped his pants exposing his erect penis. Ms. Clark felt numb and was unable to react. WALLACE then grabbed the back of her head and forcibly pushed her face towards his now-exposed penis. He demanded of her, "Right now you are going to do what I tell you to do, and I want it did now. I am going to put my dick in your mouth, and you are going to do it quickly."

36.     WALLACE forced Ms. Clark to perform oral sex on him until he ejaculated in her mouth. At no point in time did Ms. Clark consent to this act of sexual violence. When he was finished with Ms. Clark, he used a wipe to clean himself and left the room and she sat numb on in the corner. Ms. Clark was shocked and horrified by this act of sexual violence perpetrated by her supervisor. She spat Wallace's semen on a white rag. She then left the building with the rest of her co-workers in order not to be caught alone and unaware again.

37.     Later that same day, aware of his actions and the likely ramifications, WALLACE began to call Ms. Clark's phone. WALLACE threatened her and told her not to say anything to anyone about the sexual battery.

38.     The next day she could not show up for work—her fear, shock and utter despair prevented her from even being able to get out of bed. Moreover, she was certainly not able to go back to the same work site with her assailant supervising her. WALLACE proceeded to call Ms. Clark again, telling her that she was a "no call, no show" meaning that her absence at the worksite was unexcused. Ms. Clark sent WALLACE a text message telling him not to ever contact her again.

39.     Despite her unequivocal rejection of any communication with WALLACE, he repeatedly and continually called Ms. Clark. Ms. Clark felt compelled to report this incident to management at Defendant Hire Quest.

40.     In fact, Defendant WALLACE continued his pattern of harassing Plaintiff, periodically calling her cell phone through August 2020.

41.     Defendants COMPANY wrongfully and unlawfully terminated Plaintiff Clark. On or around February 28, 2020, as a result of her rejecting his advances and complaining about the sexual assault the day prior, Defendant WALLACE, personally have Plaintiff terminated and removed from the worksite.

42.     In the alternatives, Defendant COMPANY constructively discharged Plaintiff. Defendants made conditions so onerous, abusive, and intolerable for Plaintiff that no woman in Plaintiff's shoes would have been expected to continue working under such conditions and such that Plaintiff choice to resign was void of choice or free will.

43.     At all relevant times, Plaintiff was and continued to be qualified for the position he held and for the various positions he maintained with Defendants.

44.     The aforementioned allegations are just some of the examples of the discrimination and retaliation Ms. Clark suffered at the hands of the Defendants and are not an exhaustive list of Plaintiff's experiences of discrimination and harassment while employed with Defendants.

45.     Plaintiff believes he has been discriminated and retaliated against in violation of Title VII.

46.     Additionally, Ms. Clark further claims a continuous practice of discrimination and continuing violations and makes all claims herein under the continuing violations doctrine. Defendants have exhibited a pattern and practice of unlawful discriminatory conduct.

47.     As a result of the acts and conduct complained of, Ms. Clark has suffered and will continue to suffer loss of income, loss of salary, bonuses, benefits, and other compensation which such employment entails.  Ms. Clark also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

48.     Ms. Clark suffers from increased stress and anxiety.  Similarly, Ms. Clark has trouble sleeping as a result of Defendants' unlawful conduct.  Ms. Clark is nervous that he will be unable to find work again.  However, Ms. Clark is determined to find work and to pursue employment in a workplace that treats individuals with respect and dignity.

49.     As a result of Defendant's discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

50.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses,

emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

51.     Further, as a result of Defendants' unlawful employment practices, Ms. Clark felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

52.     As Defendant's conduct has been malicious, willful, extreme and outrageous, and with full knowledge of the law, Ms. Clark seeks punitive damages, jointly and/or severally against Defendants, jointly and/or severally.  Ms. Clark has presented factual allegations that would permit any reasonable jury to award damages.

53.     At bottom, Defendants are liable for their reckless disregard for Ms. Clark's personal dignity and his civil right to pursue equal employment opportunity.

## COUNT I
### *Cause of Action for Discrimination Under Title VII for Hostile Work Environment*
### *(As to Defendant Hire Quest and Defendant Wechsler)*

54.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

55.     Plaintiff is female and member of a protected class.

56.     Defendants Company prohibited under the Title VII from discriminating against Plaintiff because of her sex/gender, with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

57.     Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*:

> "(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

9

58.     Defendants Company engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by subjecting Plaintiff to a hostile work environment based solely on her sex/gender.

59.     Plaintiff was subject to unwelcome, offensive, and harassing discriminatory conduct during her employment, including forcible sexual assault, and this conduct was directed to and perpetuated upon Plaintiff because of her sex/gender.

60.     The aforementioned actions of Defendant WALLACE constitute unwelcome sexual harassment.

61.     The harassment was sufficiently severe and/or pervasive to alter the terms and conditions of Plaintiff's employment.

62.     As a result, Defendants Company subjected and permitted its supervisory employee to expose Plaintiff to discrimination and unlawful discharge.

63.     The Defendants Company knew or should have known of the harassment of Plaintiff. Defendants Company were notified about and was otherwise aware of the discriminatory conduct and policies directed at Plaintiff by Defendants Wallace and failed to take appropriate corrective action.

64.     The aforementioned actions created a hostile work environment and constituted discrimination on the basis of sex, in violation of Title VII.

65.     As a direct and proximate result of Defendants Company's intentional discriminatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.  Plaintiff accordingly demands lost economic damages, lost

wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

66.     Defendants Company's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

67.     Conduct of Defendants Company and/or its agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

68.     Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

<u>**COUNT II**</u>
***Cause of Action for Retaliation Under Title VII***
***(As to Defendant Hire Quest and Defendant Wechsler)***

69.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

70.     Title VII prohibits retaliation against an employee for opposing conduct which would violate the terms of Title VII.

71.     Plaintiff opposed discriminatory conduct by Defendants Company which is prohibited by Title VII when she complained to Defendant WALLACE directly and subsequently to Defendants Company about the discrimination and hostile work environment that she was subjected to as described and set forth above.

72.     Plaintiff's complaints about Defendant ALLIANCE's unlawful and discriminatory actions, therefore, constituted protected activity under Title VII.

73.     At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that Defendants Company's employee WALLACE violated of the law and her protected rights.

74.     After expressing her opposition to the unlawful discriminatory conduct, Defendants Company retaliated against Plaintiff by, among other things, actually and/or, in the alternative, constructively terminating Plaintiff's employment.

75.     The adverse employment actions by Defendants Company were the result of Plaintiff's opposition to the discriminatory conduct to which she was subjected, in violation of Title VII.

76.     Defendants Company's alleged bases for its adverse employment actions against Plaintiff are pretextual and have been asserted only to cover up the retaliatory nature of Defendants Company's conduct.

77.     Defendants Company's employees unlawfully retaliated against Plaintiff because she opposed a practice made unlawful by Title VII.

78.     As a result of Defendants Company's retaliatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.  Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

79.     Defendants Company's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiffs rights under Title VII.  Accordingly, Plaintiff also requests punitive damages as authorized by Title VII.

80.     Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT III
### For Sex Trafficking by Force and/or Coercion in Violation of 18 U.S.C. §1591
### (As to Defendant Wallace)

81.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

82.     18 U.S.C. 1591, entitled "Sex trafficking of children or by force, fraud, or coercion," states:

   (1)  Whoever knowingly—

      i.   in or affecting interstate or foreign commerce […] recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person;  or

      ii.  benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)

   (2) knowing, […] that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act […].

   (3)  The term "coercion" means—

      i.   threats of serious harm to or physical restraint against any person;

      ii.  any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

13

iii.   the abuse or threatened abuse of law or the legal process.

(4) The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.

(5) The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

83.     Additionally, 18 USCA § 1595. Civil remedy states as follows:

**(a)** An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees.

84.     Defendant WALLACE knowingly, in or affecting interstate and foreign commerce, solicited Plaintiff Clark knowing the fact that his means of force, threats of force, and coercion, including the mere knowledge he had in terms of his superiority over her at work, would be used to cause Plaintiff Clark to engage in a commercial sex act.

85.     Defendant WALLACE thereafter did forcibly grab and sexually assault Plaintiff in a sexual manner during the course of her employment.

14

86.     Defendant WALLACE violated the sections cited hereto and Plaintiff suffered damage as a result.

87.     As a direct and proximate result of Defendants Company's intentional discriminatory conduct in violation of § 1595, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

88.     Defendants Company's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the § 1595, warranting the imposition of punitive damages in addition to compensatory damages.

89.     Conduct of Defendants Company and/or its agents deprived Plaintiff of her statutory rights guaranteed under § 1595.

90.     Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT IV
### *Participating in a Venture in Violation of 18 U.S.C. §1591*
### *(As to All Defendants)*

91.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

92.     18 U.S.C. 1591, entitled "Sex trafficking of children or by force, fraud, or coercion," states:

(1)  Whoever knowingly—

15

       i.   benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)

      ii.   knowing […] that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act […].

93.    All Defendants benefitted financially, or by receiving something of value, from participating in a venture which has engaged in sex trafficking by force and coercion.

94.    Similarly, as a supervisor over employees of the offending corporations, the individual Defendant WALLACE received compensation in exchange for their participation in the venture.

95.    Defendants violated the sections cited hereto and Plaintiff suffered damage as a result.

96.    As a direct and proximate result of Defendants Company's intentional discriminatory conduct in violation of § 1595, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.  Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

97.    Defendants Company's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the § 1595, warranting the imposition of punitive damages in addition to compensatory damages.

98.     Conduct of Defendants Company and/or its agents deprived Plaintiff of her statutory rights guaranteed under § 1595.

99.     Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT V
### *Assault and Battery*
### *(As Against Defendant Wallace)*

100.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

101.     Defendant WALLACE sexually assaulted Plaintiff as set forth above wherein he groped her chest, and forcibly grabbed her buttocks, and subsequently forced Plaintiff to peforma oral sex upon him.

102.     Defendant WALLACE engaged in illegal and improper touching of Plaintiff, against her will and without her consent.

103.     As a result of Defendant WALLACE's repeated and rapidly escalating mechanisms of assault and battery, Plaintiff suffered serious and permanent injuries as set forth above.

104.     Defendant WALLACE violated the sections cited hereto and Plaintiff suffered damage as a result.

105.     As a direct and proximate result of Defendants WALLACE'S intentional discriminatory conduct in violation of Florida State Law, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.   Plaintiff accordingly demands lost economic

damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

106.    Defendant WALLACE's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Florida State Law, warranting the imposition of punitive damages in addition to compensatory damages.

107.    Conduct of Defendants WALLACE deprived Plaintiff of her statutory rights guaranteed under Florida State Law.

108.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT VI
### *Intentional Infliction of Emotional Distress*
### *(As Against Defendant WALLACE)*

109.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

110.    The conduct of the Defendant WALLACE was intentional, personal in nature, retaliatory, extreme, and outrageous so as to go beyond all possible bounds of decency.

111.    Such intentional, extreme and outrageous conduct caused Plaintiff to suffer humiliation, extreme embarrassment, fear for her well-being and safety, and other severe emotional distress and damages.

112.    As a result of Defendant WALLACE's assaults and batteries, Plaintiff suffered serious and permanent injuries as set forth above.

113.    Defendant WALLACE violated the sections cited hereto and Plaintiff suffered damage as a result.

18

114.     As a direct and proximate result of Defendants WALLACE'S intentional discriminatory conduct in violation of Florida State Law, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.   Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

115.     Defendant WALLACE's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Florida State Law, warranting the imposition of punitive damages in addition to compensatory damages.

116.     Conduct of Defendants WALLACE deprived Plaintiff of her statutory rights guaranteed under Florida State Law.

117.     Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT VII
### *False Imprisonment*
### *(As Against Defendant WALLACE)*

118.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

119.     Defendant WALLACE willfully acted intending to confine Plaintiff without her consent and without authority of law, caused her confinement, on multiple occasions, of which Plaintiff was aware.

120.     Defendant WALLACE forced Plaintiff to perform oral sex upon him while trapped in an isolated unit at work at Defendant Company's jobsite.  Defendant WALLACE willfully acted and knowingly trapped Plaintiff.

121.     Defendant WALLACE intended to confine Plaintiff without her consent.

122.     Plaintiff was aware of her own confinement because, she was stuck inside of a storage closet, and consciously sought to escape.

123.     As a direct and proximate result of Defendant WALLACE's false imprisonment on Plaintiff, Plaintiff has suffered and will continue to suffer severe and permanent traumatic injuries, including mental, physiological, and emotional damages.

124.     Defendant WALLACE's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Florida State Law, warranting the imposition of punitive damages in addition to compensatory damages.

125.     Conduct of Defendants WALLACE deprived Plaintiff of her statutory rights guaranteed under Florida State Law.

126.     Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

### COUNT VIII
### *Negligent Hiring*
### *(As Against Defendant Wechsler – Plead in the Alternative)*

127.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

128.     WALLACE intended to cause harmful or offensive contact with Plaintiff and, in fact, made harmful or offensive contact with Plaintiff.

129.     Defendant WECHSLER owed a duty to Plaintiff to provide an environment free from the threat of having an employee make harmful or offensive physical contact, including sexual assault, with Plaintiff.

130.     Defendant WECHSLER was aware or should have been aware of WALLACE's propensity to make harassing comments of a sexual nature and or harmful or offensive physical contact with employees, and thus indicating his unfitness for employment. Despite this knowledge, Defendant WECHSLER failed to take further action such as investigating such conduct prior to WALLACE's employment was initiated.

131.     Upon information and belief, Defendant WALLACE has a known criminal history that includes a conviction for one count of kidnapping and two counts of sexual battery with a weapon/by use of force pursuant to Miami Dade case number F98-4231.

132.     As a result of this conviction, WALLACE was and still is a registered Sexual Offender. Defendant WECHSLER was aware of WALLACE's convictions and registration obligations. Nevertheless, WECHSLER placed WALLACE in a direct supervisory position over female employees.

133.     In light of this, it was reasonably foreseeable that WALLACE would make harassing comments of a sexual nature to Plaintiff and cause harmful or offensive physical contact to Plaintiff.

134.     Plaintiff has suffered damages because of Defendant WECHSLER's negligent hiring of WALLACE.

### COUNT IX
### *Negligent Retention*
### *(As Against Defendant Wechsler – Plead in the Alternative)*

135.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

136.     WALLACE intended to cause harmful or offensive contact with Plaintiff and, in fact, made harmful or offensive contact with Plaintiff.

137.     Defendant WECHSLER owed a duty to Plaintiff to provide an environment free from having an employee make harmful or offensive physical contact with Plaintiff.

138.     Defendant WECHSLER was aware or should have been aware of WALLACE's propensity to make harassing comments of a sexual nature and or harmful or offensive physical contact with employees, and thus indicating his unfitness for employment. Despite this knowledge, Defendant WECHSLER failed to take further action such as investigating such conduct, or disciplining, terminating or reassigning WALLACE.

139.     Upon information and belief, Defendant WALLACE has a known criminal history that includes a conviction for one count of kidnapping and two counts of sexual battery with a weapon/by use of force pursuant to Miami Dade case number F98-4231.

140.     As a result of this conviction, WALLACE was and still is a registered Sexual Offender. Defendant WECHSLER was aware of WALLACE's convictions and registration obligations. Nevertheless, WECHSLER placed WALLACE in a direct supervisory position over female employees.

141.     In light of this, it was reasonably foreseeable that WALLACE would make harassing comments of a sexual nature to Plaintiff and cause harmful or offensive physical contact to Plaintiff.

142.     Plaintiff has suffered damages because of Defendant WECHSLER's negligent hiring of WALLACE.

## COUNT X
### *Negligent Training*
### *(As Against Defendant Wechsler – Plead in the Alternative)*

143.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

144.    WALLACE intended to cause harmful or offensive contact with Plaintiff and, in fact, made harmful or offensive contact with Plaintiff.

145.    Defendant WECHSLER owed a duty to Plaintiff to provide an environment free from having an employee make harmful or offensive physical contact with Plaintiff.

146.    Defendant WECHSLER was aware or should have been aware of WALLACE's propensity to make harassing comments of a sexual nature and or harmful or offensive physical contact with employees, and thus indicating his unfitness for employment. Despite this knowledge, Defendant WECHSLER failed to take further action such as investigating such conduct, or disciplining, terminating or reassigning WALLACE.

147.    Upon information and belief, Defendant WALLACE has a known criminal history that includes a conviction for one count of kidnapping and two counts of sexual battery with a weapon/by use of force pursuant to Miami Dade case number F98-4231.

148.    As a result of this conviction, WALLACE was and still is a registered Sexual Offender. Defendant WECHSLER was aware of WALLACE's convictions and registration obligations. Nevertheless, WECHSLER placed WALLACE in a direct supervisory position over female employees.

149.    In light of this, it was reasonably foreseeable that WALLACE would make harassing comments of a sexual nature to Plaintiff and cause harmful or offensive physical contact to Plaintiff.

150.     Plaintiff has suffered damages because of Defendant WECHSLER's negligent hiring of WALLACE.

## COUNT XI
### *Negligent Hiring*
### *(As Against Defendant Wechsler – Plead in the Alternative)*

151.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

152.     WALLACE intended to cause harmful or offensive contact with Plaintiff and, in fact, made harmful or offensive contact with Plaintiff.

153.     Defendant WECHSLER owed a duty to Plaintiff to provide an environment free from having an employee make harmful or offensive physical contact with Plaintiff.

154.     Defendant WECHSLER was aware or should have been aware of WALLACE's propensity to make harassing comments of a sexual nature and or harmful or offensive physical contact with employees, and thus indicating his unfitness for employment. Despite this knowledge, Defendant WECHSLER failed to take further action such as investigating such conduct, or disciplining, terminating or reassigning WALLACE.

155.     Upon information and belief, Defendant WALLACE has a known criminal history that includes a conviction for one count of kidnapping and two counts of sexual battery with a weapon/by use of force pursuant to Miami Dade case number F98-4231.

156.     As a result of this conviction, WALLACE was and still is a registered Sexual Offender. Defendant WECHSLER was aware of WALLACE's convictions and registration obligations. Nevertheless, WECHSLER placed WALLACE in a direct supervisory position over female employees.

157.    In light of this, it was reasonably foreseeable that WALLACE would make harassing comments of a sexual nature to Plaintiff and cause harmful or offensive physical contact to Plaintiff.

158.    Plaintiff has suffered damages because of Defendant WECHSLER's negligent hiring of WALLACE.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendants for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law.

Dated:  Miami, Florida
           August 4, 2021

**DEREK SMITH LAW GROUP, PLLC**

Caroline H. Miller, Esq.
701 Brickell Ave, Suite 1310
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Caroline@dereksmithlaw.com

*Counsel for Plaintiff*